Henry KEARNEY, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Feb. 12, 1965.

Fred Faulkner, Jr., Faulkner & Bertram, Campbellsville, for appellant.

Robert Matthews, Atty. Gen., F. E. Wood, Asst. Atty. Gen., Lester Spalding, Commonwealth's Atty., Lebanon, Fuller Harding, County Atty., Campbellsville, for appellee.

MOREMEN, Chief Justice.

Appellant, Henry Kearney, was convicted for the rape of Sylvia Dotson and sentenced to confinement in the penitentiary for twenty years.

On this appeal it is contended that the verdict is unsupported by proof as to the element of force or threatened violence and that the testimony of prosecutrix is incredible, improbable and at variance with the laws of common experience. It is therefore necessary for us to detail at some length the evidence produced.

The prosecutrix, Sylvia Dotson, and her sister, Mary Dotson, lived on a small farm in Taylor County. The former was eighteen years of age and the latter was twelve years of age at the time of the alleged offense. The appellant was forty-eight years of age. The evidence as a whole was very contradictory, and almost every statement advanced by one side was disputed by the other. A great deal of the testimony was devoted to impeachment of witnesses. Some of the witnesses were convicted felons.

The prosecutrix testified that on Tuesday, January 28, 1964, about 5 p. m. appellant, Kearney, accompanied by two companions, Phillip Ratliff and David Sharp (she knew Ratliff, but not the other two), walked into her house. The men had been drinking and were profane and abusive. They asked where her sister Mary was and she told them she had not returned home from school. David Sharp left to get Mary who was at a nearby house. Sylvia stated that Kearney then pointed a pistol at her and said "if you don't go with me I am going to kill you." All these statements were denied. When Mary returned with Sharp all five of them left the farm and drove to Campbellsville, spent a short time driving around, and then proceeded to the old Greensburg Road where they parked. At this time the prosecutrix testified the men exposed themselves and attempted forcibly to rape both of them. They stayed there for about an hour and a half and then left and went back to town to the residence of Pete Gertins and bought some wine. From there they went to Beard's Service Station in order to obtain some gasoline. The prosecutrix, Sylvia, denied they ever went to the station, but all the other witnesses, including her sister Mary, the owner of the filling station, the attendants and other people who were present testified that the group was at the station ten or fifteen minutes. Mary testified that they went to the station, but did not get out of the automobile. Appellant, Kearney, testified that the girls got out of the automobile and went to the restroom, and this version was substantiated by the service station attendants and others who were present at the time. Let it be noted here

that neither prosecutrix nor Mary raised a "hue or cry" and those who were present reported that the girls did not appear to be in distress at the time. From the service station they went to the home of Mrs. Smothers, apparently in search of a third woman. Mrs. Smothers, when approached by Mary Dotson, refused to go with them. The witnesses, other than prosecutrix, testified that it was at this point they went to the home of Pete Gertin to get some wine. There is a conflict of evidence as to whether another attempt at rape was made while they were parked in front of the Gertin house. From there they went to the home of appellant, Kearney, in Campbellsville. Here again is conflict as to whether they were forced to go into the house. Mr. and Mrs. Dennis Clark, whose home is twenty to twenty-five feet away from Kearney's house, testified that they were returning to their home at the time the group arrived. They said they noticed nothing unusual and no attempt was made by the girls to communicate with them. Sylvia Dotson testified that after they entered the house the doors were locked; that David Sharp took off Sylvia's clothes and then doffed Mary's clothes, and that the men took theirs off also. She testified on direct examination that Kearney took her into the bedroom and forced her to have intercourse with him under threat of using a pistol. Later, he repeated the act. She also testified that she was raped by another member of the party. They remained at appellant's house for approximately four hours. Sylvia testified that during the latter part of the evening appellant shot at wine bottles and she was wounded either by a bullet or a shard of glass. The parties then went to the Rosary Hospital where she was released without treatment, the wound being very slight. The men were boisterous and noisy at the hospital and one of the attendants called the police who sent the men home. The police then took Sylvia and her sister to the home of a friend where they spent the night. There was no mention of the offense to the police. It was not until the next evening when the girls were being transported to their home by their brother that they related to anyone the story of the alleged rape. On the following day the prosecutrix's parents brought her to town where a warrant for the arrest of the offenders was obtained.

In Holland v. Commonwealth, Ky., 272 S.W.2d 458, it was said that in cases of this type the evidence and the verdict should be scrutinized by the appellate court because the charge is easily made and difficult to disprove, and its very nature is liable to create natural indignation in the jurors' minds.

In Carrier v. Commonwealth, Ky., 356 S.W.2d 752, where the testimony of the prosecutrix was uncorroborated, it was stated that if the story of the prosecutrix was intrinsically improbable or her actions before and after the time of the alleged offense were such as indicated, when considered in the light of the rules of ordinary behavior, that the related event or the offense charged did not occur—then the proof was not sufficient to support the verdict. As stated in the Holland case: "This rests upon the appellate court's conclusion that the conviction was the result of passion and prejudice and was not based upon evidence having the quality of legal proof."

It is true that in the case under consideration the prosecutrix's testimony was corroborated (and also contradicted) by the testimony of her sister, but it appears to us that the action of both of these girls disproves their testimony. According to their version, they were abducted and held prisoners for many hours. Although they had many opportunities to escape with safety they made no attempt so to do. The prosecutrix had many opportunities to raise a hue and cry, or to complain of the offense. Let us again name the times; they were: (1) on the occasion of the alleged abduction when a younger brother was in the house; (2) when they went to the home of Mrs. Smothers and Mary went

into the house and talked to her; (3) when they were at the service station; (4) when they arrived at appellant's house and the next-door neighbors, Mr. and Mrs. Clark, were going into their house at the same time; (5) when they were at the hospital; (6) when the police took them to a friend's house to spend the night; (7) during the day when they were at their friend's house.

We have concluded that the prosecutrix's behavior during the course of the evening was such as to indicate that she was not raped. We believe the verdict was flagrantly against the evidence adduced.

Judgment reversed.